UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09cv59 -RJC

| | |
|---|---|
| JOSEPH MCCREA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| KIRT A. PREVATT, ) | |
| Officer, Lanseboro Correctional Institution, ) | |
| and JOSEPH C. EDDINS, ) | |
| Officer, Lanesboro Correctional Institution, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment (Doc. No. 20) and the related filings. For the reasons set forth below, the Defendants' motion will be denied.

## I. FACTUAL AND PROCEDURAL HISTORY

On February 11, 2009, the Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 against Defendants Eddins and Prevatt, both correctional officers, alleging that they had subjected him to excessive force in violation of his constitutional rights.

The Plaintiff alleges the following facts. On August 10, 2008, while housed in the Maximum Control Unit ("MCON") at Lanesboro Correctional Institution, the Plaintiff and Defendant Prevatt argued through the Plaintiff's cell door and, as a result, Defendant Prevatt radioed the control booth to open the Plaintiff's cell door. (Complaint ¶¶ 4, 6, 7). Defendant Prevatt entered the Plaintiff's cell with his baton drawn and ordered the Plaintiff to lie on the ground. The Plaintiff refused, and Defendant Prevatt began beating him in the head with the baton. (Id. ¶¶ 7, 9). Defendant Eddins entered the cell and began punching Plaintiff in the head and body. (Id. ¶ 10). The Plaintiff

contends that he never threatened the Defendants and that no weapon was found. (Id. ¶ 11). As a result of the beating, the Plaintiff suffered an orbital fracture to his right eye, orbital trauma, and a subconjunctival hemorrhage in his right eye. (Id. ¶ 12). The Plaintiff contends that he continues to suffer from blurred vision, pain in his right eye area and severe headaches. (Id. ¶ 14).

The Defendants contend the following facts. Around 1:30 p.m. on August 10, 2008, the Plaintiff charged Defendant Prevatt when his cell door opened. (Doc. No. 21-2: Merriman Aff. ¶ 14; Doc. No. 21-6: Prevatt Aff., ¶ 15). The Plaintiff grabbed Officer Prevatt's wrist and pulled Officer Prevatt toward him screaming, "I'm going to cut your white ass." (Doc. No. 21-3: Merriman Aff. ¶ 14; Doc. No. 21-6: Prevatt Aff. ¶ 15). Because the Plaintiff had pulled him so close, Officer Prevatt was unable to use his pepper spay without also disabling himself. (Doc. No. 21-6 ¶ 20). Officer Prevatt pushed the Plaintiff backward toward his bunk. (Id. ¶ 21). The Plaintiff began advancing toward Defendant Prevatt brandishing a bare razor blade. (Id. ¶ 22). The Plaintiff and Officer Prevatt began to struggle. (Id. ¶ 23). Officer Eddins joined the struggle and assisted Officer Prevatt in subduing the Plaintiff. (Id.). Officers Prevatt and Eddins forcibly sat the Plaintiff on the edge of his bunk, bent him forward at the waist, and applied the handcuffs behind his back. (Id.). As Officers Prevatt and Eddins left the Plaintiff's cell, the Plaintiff continued his threats yelling, "I am going to cut my throat and you will lose your job." (Id. ¶ 24). When Officers Prevatt and Eddins left the Plaintiff's cell, there was no blood on the Plaintiff's person, but his eyes appeared a little red. (Id. ¶ 25).

Officer Martin spoke to the Plaintiff at 1:45 p.m. and noticed the Plaintiff's eye was slightly swollen. The Plaintiff told Officer Martin that he wanted to cut himself. (Doc. No. 21-4: Martin Aff.¶ 10 and 11). At 2:30 p.m., Nurse Santa Lucia went to the Plaintiff's cell to examine the Plaintiff and observed dried blood on his t-shirt. (Doc. No. 21-5: Sant Lucia Aff. ¶ 8). The Plaintiff

told her the blood was from his nose. (Id.). Nurse Santa Lucia observed that there was no blood coming from the Plaintiff's nose at that time. She also observed slight swelling to the Plaintiff's cheek. (Id.). The Plaintiff complained that his eye was red. Nurse Santa Lucia observed a reddened area to the base of the conjunctiva of his right eye but no visible swelling to his right eye at that time. (Id.). Fifteen minutes later, Nurse Santa Lucia observed that the Plaintiff's eye was swollen shut. In her professional opinion, it appeared as if the Plaintiff had been re-injured since the last time she had seen him. (Id. ¶ 9). Officer Tucker told Nurse Santa Lucia that he observed the Plaintiff scratching the upper inside lid of his right eye with his thumb. (Id. ¶ 10). At 3:00 p.m., Officer Martin returned to the Plaintiff's cell to place him on suicide watch. She observed that the Plaintiff's eye was swollen shut. In her opinion, it looked as if the Plaintiff had re-injured himself. (Doc. Nol. 21-4: Martin Aff. ¶ 17).

At 5:00 p.m. Officer Merriman observed the Plaintiff swallow two razor blades. (Doc. No. 21-3: Merriman Aff. ¶16). Nurse Santa Lucia came to the Plaintiff's cell. The Plaintiff told her that he had swallowed two razor blades, and he complained of a burning sensation in his throat. (Doc. No. 21-5: Santa Lucia Aff. ¶ 12). The Plaintiff was sent to CMC Union Hospital Emergency Room for evaluation. (Id.). At the hospital, the Plaintiff reported that a correctional officer hit him with a baton. (Doc. No. 21-1: Stover Aff.¶ 50 ). An x-ray revealed a fracture of the medial wall of the Plaintiff's right orbit.

In additional to the above evidence, the Defendants offer affidavits attesting to the shape and size of the Plaintiff's cell and describing the materials that make up the cell, as well as the various protrusions upon which the Plaintiff could have injured himself. (See Doc. Nos. 21-4 and 21-6: Martin and Prevatt Aff.). Additionally, the Defendants offer the affidavit of Dr. Stover, who also states that there are ample protrusions in the Plaintiff's cell upon which he could have

injured himself. (Doc. No. 21-1: Stover Aff.¶ 83). Dr. Stover also avers that in his medical opinion, "given the Plaintiff's long documented history of manipulating people and situations through violence and grossly self-injurious behavior, it is more probable than not that the fracture to the medial wall of the Plaintiff's right orbit suffered on 10 August 2008 was self-inflicted." (Id. ¶ 84).

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the Record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658,

2677, 557 U.S. ___ (2009) (quoting <u>Matsushita v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

To succeed on an excessive force claim under the Eighth Amendment, a prisoner must prove: (1) a subjective component – that the prison official acted with a "sufficiently culpable state of mind," and (2) an objective component – that the harm inflicted was sufficiently serious. <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991). The key issue with respect to the subjective inquiry is whether the force was applied in a good-faith effort to maintain or restore order and discipline, or maliciously and sadistically to cause harm. <u>Hudson v. McMillian</u>, 503 U.S. 1, 6 (1993). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." <u>Id.</u> at 8. The inmate must show that the use of force was "objectively harmful enough" to constitute a constitutional violation. <u>Id.</u> This requires the court to look at the severity of the inmate's injuries in the context under which they occurred.

The Plaintiff filed a response to the Defendants' motion for summary judgment arguing that there are genuine issues of material fact such as whether any use of force was justified. The Plaintiff alleges that he and Officer Prevatt engaged in a verbal argument about whether the Plaintiff would go to recreation. He claims Officer Prevatt entered his cell and told him to lie down, and when the Plaintiff did not lie down, Prevatt beat him with a baton. Officer Eddins then allegedly joined in the beating, and the Plaintiff sustained an orbital fracture. The Plaintiff contends that he did not charge Officer Prevatt, threaten him, or have a weapon in his cell. If the Plaintiff's version of the facts is accurate, a minimal level of force – at most – might be justified if the Plaintiff failed to obey the command to lie down. However, the level of force used, if any, is a genuine issue of material fact that will have to be determined by a jury. In addition, whether such force was justified in light of the circumstances is a jury question. That the Defendants' version of the facts differs so

significantly from the Plaintiff's version, supports this Court's conclusion that summary judgment is not appropriate in this case. The Defendants' Motion for Summary Judgment will be denied, and this case will be scheduled for trial.

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment (Doc. No. 20) is **DENIED**. The Court will schedule a status conference in the coming days, where a trial date will be set.

Signed: February 11, 2011

Robert J. Conrad, Jr.
Chief United States District Judge